# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JEAN MELLIEN,

      Plaintiff,

v.                                                                   2:22-cv-768-JLB-NPM

U-DRIVE MOTORS, LLC and
FLORIDA INTERCEPT, LLC,

      Defendants.

---

## ORDER

Over a year ago, the court granted defendant U-Drive Motors, LLC's motion to compel arbitration. (Doc. 24). But, to date, the parties still have not submitted to arbitration. And in trying to decipher why this is, each party points the finger at the other. Plaintiff Jean Mellien believes the fault lies with defendants, who never paid the arbitration filing fee and thus forfeited any right to arbitration; he moves to vacate the order compelling arbitration and to lift the stay in this case. (Doc. 43). Defendants take a different view, claiming they never received notice that Mellien initiated arbitration. While neither party is blameless, the court finds that U-Drive has defaulted in the arbitration.[1]  So Mellien's motion is **granted**.

---

[1] Though both defendants oppose Mellien's motion, only U-Drive moved to compel arbitration, so it is U-Drive's conduct that is at issue.

As best the court can tell, the procedural history of this action goes something like this: on March 6, 2023, U-Drive moved to compel arbitration citing an arbitration provision in the sales contract. (Doc. 21). Ten days later, Mellien's attorney emailed U-Drive's counsel stating that, upon review of the motion, he is "willing to dismiss the claims without prejudice against U-Drive only, and will proceed by filing in arbitration." (Doc. 44-1 at 2).[2] About a month later, on April 13, 2023, the court entered an order compelling arbitration and staying the case. (Doc. 24). Despite Mellien's counsel's indication that he would initiate the arbitration proceeding, five months passed without him doing so. Nor did U-Drive start the proceedings or relay its choice of arbitration forum (either JAMS or AAA), despite the contract granting it this right.[3] Finally, on September 8, 2023, Mellien initiated the arbitration with JAMS and paid his portion of the filing fee.[4] (Doc. 43-7).

---

[2] U-Drive never supplemented its arbitration motion to reflect that it was unopposed, nor did Mellien or Florida Intercept respond to the motion despite the opportunity to do so. (Doc. 22). Counsel are reminded that this approach to motion practice needlessly wastes the court's time and makes for the inefficient adjudication of questions presented.

[3] The contract provides that "[t]he party electing arbitration may choose either [JAMS or AAA] and its applicable rules[.]" (Doc. 21-1 at 5).

[4] Per JAMS's consumer arbitration standards, Mellien, as the consumer, was responsible only for $250 of the filing fee; defendants would pay the remaining $3,250. JAMS, CONSUMER ARBITRATION MINIMUM STANDARDS, No. 7, https://www.jamsadr.com/consumer-minimum-standards/.

On October 13, 2023, JAMS issued a Notice of Intent to Initiate Arbitration. It outlined each party's responsibility for the filing fee and noted that "[u]pon receipt of the balance of the Filing Fee from Respondents, JAMS will formally commence this matter[.]" (Doc. 43-1). The notice was sent by mail to U-Drive's corporate office in Hollywood, Florida. On December 1st, having not received the filing fee from either defendant, JAMS emailed Mellien's counsel and attorneys Glen Waldman and Taylor Ager—both of whom were attorneys of record for U-Drive. The email requested a status update regarding payment of the filing fee. (Doc. 43-2 at 1). But defendants took no action. So JAMS sent a follow-up email on December 11th and again on December 20th. (Doc. 43-2 at 3-4). Still, the filing fee remained unpaid by defendants.

The new year brought new life to this action. On January 3, 2024, JAMS sent the parties a final notice that warned "if payment of the filing fee is not received from U-Drive Motors and Florida Intercept within 14 days, JAMS will administratively close the arbitration." (Doc. 43-4). Six days later (and five days late), the parties submitted to the court a status report advising of the foregoing posture.[5] In the status report, Mellien explained the defendants' failure to pay the

---

[5] In the order compelling arbitration, the court required the parties to provide a joint status update on the arbitration by December 31, 2023. (Doc. 24 at 3). When the parties failed to meet this deadline, the court entered an order directing compliance. (Doc. 29).

filing fee. U-Drive, on the other hand, conveyed that it could not agree to use JAMS or accept Mellien's preference for a three-arbitrator panel.[6] Instead, U-Drive wanted to conduct arbitration through NAM with a single arbitrator. Both parties requested a status conference (Doc. 31).

The court held a status conference on January 25th. (Doc. 36). There U-Drive changed course, explaining it had no problem with JAMS. Rather, it refused to submit to a three-arbitrator panel, arguing a single arbitrator would suffice for this run-of-the-mill, vehicle-repossession case. But during the hearing, the court identified and reviewed the operative JAMS rules, which require only a single arbitrator. *See* JAMS Streamlined Rule 12(a).[7] Given this apparent revelation, U-Drive relented. Even so, the court permitted Mellien an opportunity to brief whether U-Drive was in default in proceeding with the arbitration. And with no filing fee paid by the defense, JAMS subsequently closed the arbitration on February 1, 2024. (Doc. 43-5).

Against that backdrop, we turn to Mellien's request to resume the litigation of this matter. In his view, U-Drive bore the burden of initiating the arbitration proceeding, which it neglected to do for five months. And when Mellien took it upon

---

[6] At the status conference, Mellien claimed he never mentioned an arbitration panel. And U-Drive offers no evidence in support. But even assuming Mellien was insistent on this condition, as discussed below, it would not alter the outcome.

[7] https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-12.

himself to do so, U-Drive neglected to pay the arbitration fee, despite several email warnings from JAMS. Even after the parties filed their status report and attended the status conference, during which U-Drive agreed to submit to JAMS, it still never paid. After almost a year of sitting on its hands, Mellien believes U-Drive forfeited its right to arbitrate this dispute.

Before proceeding to the merits, the court address the proper terminology for this action. In the briefing, Mellien uses the terms "waiver" and "forfeiture" interchangeably. Defendants, on the other hand, insist that waiver is the proper term. Neither is correct. "Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017) (cleaned up and omitting internal citations); *see also Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004); *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022). As such, waiver is not the proper term since there is no argument that U-Drive *intentionally relinquished* its right to arbitrate. Nor is "forfeiture" a good fit since U-Drive did, in fact, timely assert its right to arbitration; rather, Mellien argues it failed to perform on this right.[8]  The proper term is found within the Federal Arbitration Act ("FAA").

Section three of the FAA provides that, upon referring a case to arbitration, the court must stay the case until the arbitration is complete "providing the applicant

---

[8] These distinctions are not a matter of semantics. But that is an issue for another time.

for the stay is not in default in proceeding with such arbitration." 9 U.S.C § 3. In other words, "a district court may lift a stay if the applicant for the stay has defaulted in the arbitration." *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019). Thus, the relevant inquiry (and terminology) is whether U-Drive, as the applicant for the stay, *defaulted* in the arbitration.

With the vocabulary cleared up, the court turns to the merits. A preliminary issue is who bore the burden of initiating the arbitration. Mellien argues it was U-Drive's burden as the party requesting arbitration. But courts typically look to the governing arbitration rules or the parties' contract to determine who bears this responsibility. *See, e.g.*, *Johnson v. E. Bay Kia, Inc.*, No. CIV.A. 08-00656CGB, 2009 WL 928674, at *1 (S.D. Ala. Apr. 2, 2009) ("Since the terms of the contract govern, the court should have ordered plaintiff to initiate the arbitration proceedings."); *Nazon v. Shearson Lehman Bros.*, 832 F. Supp. 1540, 1542 (S.D. Fla. 1993) ("Although the result may seem unfair, the Rules of the NASD and the NYSE both require that the plaintiff initiate arbitration proceedings and pay the required fees."). But the court need not do so here because, as U-Drive observes, Mellien's counsel took on this obligation by stating he "will proceed by filing in arbitration." (Doc. 44-1 at 2). Because he gave this assurance, he was bound to follow through. Thus, Mellien bore the burden of commencing arbitration.

Even so, Mellien cured this oversight. Although it was five-months later, Mellien eventually initiated the arbitration proceeding with JAMS.[9] Defendants never raised any issue with this delay. And after JAMS sent defendants an initial notice and request for filing fee, four follow-up emails were sent directly to U-Drive's counsel warning that the filing fee needed to be paid. Yet U-Drive never answered the call, which has resulted in JAMS terminating the arbitration. Because of its failure to pay the filing fee, despite several warnings, U-Drive defaulted in the arbitration. *See Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018) (finding the district court properly determined the defendant defaulted in the arbitration by refusing to pay the filing fees, which resulted in termination of the arbitration proceeding, but reversing on other ground); *Freeman*, 771 F. App'x at 933 (holding defendant defaulted in the arbitration under section 3 of the FAA when "it refused to pay the initial filing fee"); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) ("Failure to pay arbitration fees constitutes a 'default' under § 3." (and collecting cases)); *cf. Mason v. Coastal Credit, LLC*, No. 3:18-cv-835-J-39MCR, 2018 WL 6620684, *8 (M.D. Fla. Nov. 16, 2018).

U-Drive raises several unpersuasive points in opposition. It argues that it cannot be held in default for failing to pay the filing fee because it never received

---

[9] To the extent U-Drive, as the party with the right to select the forum, did not wish to use JAMS, it forfeited this right by neglecting to invoke it for five months after the court granted its motion to compel arbitration.

notice from JAMS or Mellien and was thus unaware Mellien had initiated arbitration. It explains that, although attorney Glen Waldman was a recipient of the emails, he was not *actually* representing U-Drive. Apparently, his only involvement in this case was filing U-Drive's answer. And as the managing partner of the defense firm's Miami office, Waldman allegedly receives hundreds of emails a day and cannot possibly be expected to see the JAMS emails or pay them any mind. This argument is unmoving. Attorney Waldman was counsel of record from U-Drive's first appearance[10] until he withdrew on January 31, 2024. (Doc. 40). As counsel of record, he was responsible for this case.

U-Drive nevertheless insists the JAMS notifications should have been directed to attorney Silverman because he filed a Notice of Appearance instructing that all communications and filings be sent to him. (Doc. 25). But so did attorney Taylor Ager. (Doc. 26). And Ager, who appeared on U-Drive's behalf in November, was also a recipient of the JAMS email notifications, the first of which was sent after his initial appearance in December. Although U-Drive conveniently makes no mention of this fact in its briefing, JAMS apparently directed its notifications to two

---

[10] It makes no difference that attorney Waldman did not file a notice of appearance. As the local rules explain, a lawyer's pleading serves as that lawyer's appearance. M.D. Fla. R. 2.02(b)(1). Because Waldman signed and filed U-Drive's answer (Doc. 18), he appeared in this action on U-Drive's behalf.

U-Drive attorneys—Waldman and Ager. Thus, to the extent U-Drive did not receive the email warnings, it was a problem of its own making.

U-Drive next argues that courts in a different circuit "have declined to find waiver where a party previously objected to arbitration for justifiable reasons." *Schreiber v. Friedman*, No. 15-cv-6861-CBAJO, 2017 WL 5564114, *9 (E.D.N.Y. Mar. 31, 2017). In U-Drive's view, it was justified in failing to pay the filing fee because Mellien insisted on arbitrating with a three-arbitrator panel rather than a single arbitrator. Notwithstanding the fact this case law is inapplicable, U-Drive's position was not justified. As discussed, the applicable JAMS rules are clear that streamlined arbitrations will be conducted by *one* neutral arbitrator. JAMS Streamlined Rule 12(a). The parties' contract further mandates that "[t]he arbitration will be by a single arbitrator." (Doc. 21-1 at 6). Had U-Drive familiarized itself with either the JAMS rules or its own contract, it would have known that only one arbitrator would be utilized, rendering its objection on such grounds a red herring. Plus, any such dispute could have been raised with the arbitrator(s) after U-Drive paid the filing fee and commenced arbitration.

Finally, U-Drive contends that it would have paid the filing fee after the status conference, but it believed—based on representations it thought were made at the conference—that JAMS had closed the proceeding. But Mellien never made any such representation. And even if he had, what U-Drive *would have* done is of little

worth given what it *should have* done—promptly pay the filing fee at JAMS's first request. Moreover, nothing prevented U-Drive from contacting JAMS immediately after the conference to make any such arrangement. So U-Drive's final argument fails.

Because U-Drive defaulted in the arbitration, Mellien's motion to lift the stay (Doc. 43) is granted. This matter is no longer referred to arbitration for resolution, and the clerk is directed to remove the stay flag from the docket. The court will schedule a Rule 16 conference by separate notice. If Mellien's filing fee with JAMS was not refundable, and the parties are unable to resolve the issue on their own, then Mellien may file a motion by **August 20**, **2024**, to obtain an order compelling defendants to reimburse Mellien for the JAMS filing fee, which the court would be inclined to grant.

**ORDERED** on August 6, 2024

NICHOLAS P. MIZELL
United States Magistrate Judge